UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
-----------------------------------------------------------------

| | | |
|---|---|---|
| PATRICK PIZZELLA, Acting Secretary of Labor, United States Department of Labor, | : | **COMPLAINT** |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | |
| LIONSGATE DISASTER RELIEF LLC, LIONSGATE HOMES LLC, and JEREMY EVANS, Individually, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------

1.      Plaintiff, PATRICK PIZZELLA, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq*.) ("the Act" or "the FLSA"), alleging that Defendants violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

2.      The Secretary brings this action seeking, *inter alia*, back wages and liquidated damages for over 200 workers employed by Defendants providing disaster relief work in Puerto Rico following Hurricane Maria.

3.      From April 2018 through at least August 2018, Defendants' employees typically worked sixty hours per week, but Defendants failed to pay any overtime. Rather, Defendants deprived their employees of their rightfully owed wages by paying them day rates or salaries without regard to actual hours worked each week, and created false payroll records designed to simulate compliance with the Act while actually evading the law.

1

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

5.      Venue of this action lies in the United States District Court for the District of Puerto Rico because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### THE PARTIES
#### *Plaintiff*

6.      Plaintiff, PATRICK PIZZELLA, Acting Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

#### *The Company Defendants*

7.      Defendant LIONSGATE DISASTER RELIEF LLC ("Lionsgate Disaster Relief") is a company organized under the laws of the Commonwealth of Puerto Rico, having its principal office at 14 Parque Street Urb. Isomar, Vega Alta, Puerto Rico 00692.

8.      Defendant LIONSGATE DISASTER RELIEF performed disaster relief work in Puerto Rico following Hurricane Maria.

9.      Defendant LIONSGATE DISASTER RELIEF performed work in Puerto Rico from at least April 2018 through at least the fall of 2018.

10.     Defendant LIONSGATE DISASTER RELIEF, at all relevant times, has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the employees, and thus is an employer of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

2

11.     Defendant LIONSGATE HOMES LLC ("Lionsgate Homes") is a company organized under the laws of the state of Texas, having its principal office at 8300 Telephone Road, Houston, Texas 77041.

12.     Defendant LIONSGATE HOMES performed disaster relief work in Puerto Rico following Hurricane Maria.

13.     Defendant LIONSGATE HOMES performed work in Puerto Rico from at least April 2018 through at least the fall of 2018.

14.     Defendant LIONSGATE HOMES, at all relevant times, has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the employees, and thus is an employer of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.     The two companies, collectively, are referred to herein as the "Lionsgate Defendants."

*Individual Defendant*

16.     Defendant JEREMY EVANS, an individual, is the Chief Financial Officer of Lionsgate Disaster Relief.

17.     Defendant JEREMY EVANS is the Chief Financial Officer of Lionsgate Homes.

18.     Upon information and belief, Jeremey Evans resides in Montgomery, Texas.

19.     During the relevant time period, Defendant JEREMY EVANS personally participated in the day-to-day operations of the Lionsgate Defendants.

20.     Defendant JEREMY EVANS has authority, and exercised his authority, to determine compensation for employees of the Lionsgate Defendants.

3

21.     Defendant JEREMY EVANS decided to compensate employees of the Lionsgate Defendants with a day rate without regard to overtime compensation for hours worked over 40 in a week, in violation of Section 7 of the Act, 29 U.S.C. § 207.

22.     Upon information and belief, at all relevant times, defendant JEREMY EVANS had authority to hire, and did hire, employees of the Lionsgate Defendants.

23.     Upon information and belief, defendant JEREMY EVANS had authority to fire employees of the Lionsgate Defendants.

24.     During the relevant time period, defendant JEREMY EVANS had authority to, and did, supervise employees of the Lionsgate Defendants.

25.     During the relevant time period, defendant JEREMY EVANS monitored the work of employees of the Lionsgate Defendants.

26.     During the relevant time period, defendant JEREMY EVANS handled payroll for the Lionsgate Defendants.

27.     At times during the relevant time period, defendant JEREMY EVANS distributed paychecks to employees of the Lionsgate Defendants.

28.     At all relevant times, defendant JEREMY EVANS used an email address with the domain name "lionsgatehomesllc.com" in all his correspondence with the United States Department of Labor Wage and Hour Division (the "Wage and Hour Division") on behalf of the Lionsgate Defendants.

29.     On behalf of the Lionsgate Defendants, Defendant JEREMY EVANS conducted the final conference with the Wage and Hour Division.

30.     Defendant JEREMY EVANS represented to the Wage and Hour Division that he had authority to commit company resources to pay back wages to employees.

4

31.     Defendant JEREMY EVANS has regulated the employment of all persons he has employed and has acted directly and indirectly in the Lionsgate Defendants' interests in relation to the employees. Defendant JEREMY EVANS is thus an employer of the Lionsgate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

### DEFENDANTS OPERATE AS A SINGLE, INTEGRATED EMPLOYER
*The Lionsgate Defendants Jointly and Collectively Employ*
*the Affected Employees*

32.     Together, the Lionsgate Defendants employ the drivers, office, warehouse, and field employees of the Lionsgate Defendants in Puerto Rico.

33.     At all relevant times, the Lionsgate Defendants acted jointly in employing their employees.

34.     At times relevant to the complaint, field employees who were paid by Lionsgate Disaster Relief filled out timesheets with the name Lionsgate Homes.

35.     At times relevant to the complaint, supervisors employed by Lionsgate Homes gave out daily instructions and supervised Lionsgate Disaster Relief field employees.

36.     Upon information and belief, at times relevant to the complaint, Lionsgate Disaster Relief field employees used materials purchased with Lionsgate Homes credit cards.

37.     Casey Hardy is the President and Chief Executive Officer of Lionsgate Disaster Relief.

38.     Casey Hardy is the President and Chief Executive Officer of Lionsgate Homes.

39.     Kristopher Clark is the Chief Operating Officer of Lionsgate Disaster Relief.

40.     Kristopher Clark is the Chief Operating Officer of Lionsgate Homes.

41.     Cody Hardy is the Chief Process Officer of Lionsgate Disaster Relief.

5

42.     Cody Hardy is the Executive Vice President of Lionsgate Homes.

43.     James Albi is the Vice President of Business Development for Lionsgate Disaster Relief.

44.     James Albi provided his business card from Lionsgate Homes to the Wage and Hour Division during the initial conference with Lionsgate Disaster Relief.

45.     Defendant JEREMY EVANS was not listed on Lionsgate Disaster Relief's payroll in multiple weeks during the relevant time period.

46.     Upon information and belief, defendant JEREMY EVANS was paid exclusively by Lionsgate Homes during the weeks he was not on Lionsgate Disaster Relief's payroll.

47.     At times relevant to the complaint, Lionsgate Disaster Relief management exclusively used email addresses with "lionsgatehomesllc.com" domain names.

48.     All email addresses for Lionsgate Disaster Relief officers and managers on Lionsgate Disaster Relief's Puerto Rico Amendment to Articles of Incorporation have "lionsgatehomesllc.com" domain names.

49.     Lionsgate Disaster Relief describes itself as a division of Lionsgate Homes on its Facebook Page.

50.     Lionsgate Disaster Relief's website has listed its headquarters in Puerto Rico with operations in Houston, Texas.

### DEFENDANTS ARE AN ENTERPRISE
### ENGAGED IN COMMERCE WITHIN THE MEANING OF THE ACT

51.     Together, Defendants are an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

52.     Defendants' business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

53.     As described herein, the Lionsgate Defendants engaged in the business of construction on homes damaged by natural disasters.

54.     In pursuing this common business purpose, each of the Lionsgate Defendants engaged in substantially similar business activities at all times relevant to this complaint.

55.     The Lionsgate Defendants' business activities were performed under common control.

56.     A common management team, including Defendant JEREMY EVANS, exercised control over the Lionsgate Defendants' operations.

57.     Defendants had unified operations.

58.     At all times relevant to this Complaint, Lionsgate Disaster Relief had an annual gross volume of sales made or business done in an amount not less than $500,000.

59.     At all times relevant to this Complaint, Lionsgate Homes had an annual gross volume of sales made or business done in an amount not less than $500,000.

60.     The Lionsgate Defendants have employed employees listed in Exhibit A in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to tools such as hammers and drills, and construction materials.

61.     Therefore, Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

62.     Together, Defendants are an employer of Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

### DEFENDANTS' PROHIBITED PAY PRACTICES

*Defendants Failed to Pay Premium Pay for All Overtime Hours Worked*

63.     From at least April 2018 through at least August 2018, Defendants employed at least 201 employees in Puerto Rico.

### *Field Employees*

64.     Among other tasks, field employees performed construction and repair work on homes damaged by Hurricane Maria.

65.     During the relevant time period, field employees regularly worked approximately 50 to 70 hours per week.

66.     Defendants paid field employees fixed day rates, typically ranging from $120 to $160 for all hours worked each day.

67.     Field employees who drove their own vehicles received a reimbursement for each day they drove in addition to their day rate.

68.     Defendants tracked field employees' time worked and wages paid via hand-written timesheets and electronic payroll spreadsheets that reflected a fixed rate pay scheme.

69.     Defendants' timesheets included space to write out an employee's "pay rate a day."

70.     For example, a field employee worked 139 hours over 12 days for the two-week pay period ending July 31, 2018, working 70 hours the first week and 69 hours the second week, and was paid a day rate of $150 for each day worked.

71.     For example, another field employee worked 110 hours over 11 days for the two-week pay period ending July 31, 2018, working 50 hours the first week and 60 hours the second week, and was paid a day rate of $120 for each day worked.

72.     Defendants' payroll spreadsheets included columns for each field employee's days worked and fixed day rate, which were typically multiplied to yield total wages for the pay period.

73.     These fixed rates of pay did not change regardless of the number of overtime hours employees worked each week.

74.     Defendants did not pay their field employees any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

75.     The Defendants engaged in the practices described in the preceding paragraphs 64 through 74 from at least April 2018 through at least August 2018.

*Warehouse Employees*

76.     Among other tasks, warehouse employees dispatched orders.

77.     During the relevant time period, warehouse employees regularly worked approximately 50 to 70 hours per week.

78.     Defendants paid warehouse employees fixed day rates, typically ranging from $120 to $150 for all hours worked each day.

79.     These fixed rates of pay did not change regardless of the number of overtime hours employees worked each week.

80.     Defendants did not pay their warehouse employees any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

81.     The Defendants engaged in the practices described in the preceding paragraphs 76 through 80 from at least April 2018 through at least August 2018.

### *Drivers*

82.     Among other tasks, drivers delivered materials from the warehouse to homes.

83.     During the relevant time period, drivers regularly worked approximately 50 to 70 hours per week.

84.     Defendants paid drivers fixed day rates, typically ranging from $120 to $150 for all hours worked each day.

85.     These fixed rates of pay did not change regardless of the number of overtime hours employees worked each week.

86.     Defendants did not pay their drivers any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

87.     The Defendants engaged in the practices described in the preceding paragraphs 82 through 86 from at least April 2018 through at least August 2018.

### *Office Employees*

88.     Among other tasks, office employees typically performed basic clerical work and data entry.

89.     During the relevant time period, office employees regularly worked approximately 50 to 60 hours per week.

90.      Defendants paid office employees fixed bi-weekly salaries typically ranging from $1,038 to $1,346 for all hours worked each pay period.

10

91.     Defendants did not pay their office employees any additional premiums of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

92.     Defendants engaged in the practices described in the preceding paragraphs 88 through 91 from at least April 2018 through at least August 2018.

**DEFENDANTS FAILED TO MAKE AND MAINTAIN ACCURATE RECORDS**

93.     Since at least April 2018, Defendants have failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

94.     During the relevant time period, employees primarily tracked their hours worked via hand-written timesheets.

95.     Defendants never provided the Wage and Hour Division with any timesheets for the month of August 2018.

96.     For some employees, Defendants did not provide complete timesheets for all weeks worked during the relevant time period.

97.     During the relevant time period, Defendants did not provide any timesheets for some employees.

98.     Defendants discarded some timesheets.

99.     During the relevant time period, Defendants also maintained electronic payroll spreadsheets of employees' days worked and wages paid.

100.    Defendants only provided these payroll spreadsheets from the pay period ending May 25, 2018 through the pay period ending August 17, 2018.

101.    Defendants did not provide any payroll spreadsheets prior to the pay period ending May 25, 2018.

11

102.    During the relevant time period, Defendant's timesheets and electronic payroll records generally accurately reflect employees' days worked and wages paid.

103.    During this same time period, however, Defendants created paystubs and Wage Hour payroll forms designed to falsely suggest that Defendants complied with the overtime requirements of the Act.

104.    Defendants' paystubs and payroll forms purport to comply with overtime rates by altering the number of hours worked and the pay rate to match the total wages paid under the day rate practice.

105.    Defendants stated to Wage and Hour that the sole purpose for creating the Wage Hour payroll forms with different hours and wage rates was to simulate compliance.

106.    Defendants' paystubs and Wage Hour payroll forms falsely record that employees were paid an hourly wage with overtime pay.

107.    In fact, Defendants paid their employees fixed rates without additional overtime premiums for hours over 40.

108.    Defendants engaged in the practices described in the preceding paragraphs 93 through 107 from at least April 2018 through at least August 2018.

## FIRST CAUSE OF ACTION
### Violation of Sections 7(a) and 15(a)(2) of the FLSA
### Failure to Pay Overtime

109.    The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 108 of the complaint.

110.    Defendants have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than forty hours, as prescribed in Section 7 of the Act, without

compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

111.    As set forth in paragraphs 1 through 108 above, at all times relevant to this Complaint, Defendants' employees regularly worked in excess of forty hours during any given workweek.

112.    Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section 17 of the Act.

### SECOND CAUSE OF ACTION
### Violation of Sections 11(c) and 15(a)(5) of the FLSA
### Failure to Make, Keep, and Preserve Adequate and Accurate Records

113.    The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 108 of the complaint.

114.    Defendants have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.  More specifically, as set forth in paragraphs 1 through 108 above, Defendants failed to make and maintain adequate and accurate records of many employees' actual daily and weekly hours worked, and all employees' total straight time earnings and total premium pay for overtime hours.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5)of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime wage compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees, and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Secretary for the costs of this action; and

5.  An order granting such other relief as the Court may deem necessary or appropriate.

DATED:          August 14, 2019
                New York, New York

                                        KATE S. O'SCANNLAIN
                                        Solicitor of Labor

                                        JEFFREY S. ROGOFF
                                        Regional Solicitor

                        BY:     /s/ James R. Wong
                                JAMES R. WONG
                                Senior Trial Attorney
                                Bar No. G01709

                                /s/ B. Carina De La Paz
                                B. CARINA DE LA PAZ
                                Trial Attorney
                                Bar No. G03008

                                U.S. Department of Labor,
                                *Attorneys for Plaintiff Secretary of Labor*

                                U.S. Department of Labor
                                Office of the Regional Solicitor
                                201 Varick Street, Room 983
                                New York, NY 10014
                                (646) 264-3646
                                (646) 264-3660 (fax)
                                Wong.james.r@dol.gov
                                NY-SOL-ECF@dol.gov

**EXHIBIT A**

ACEVEDO, GIOVANNY
ACEVEDO PEREZ, KEVIN JOEL
ACEVEDO RAMIREZ, JOSE
AGUILAR, RAYMOND
ALAMO ADORNO, RENE
ALMODOVAR RODRIGUEZ, CARLOS
ALONSO FIGUEROA, WILFREDO
ALVARADO VEGA, LUIS
ANEZ, RICHARD
ARROYO RAMOS, WALDEMAR
AYALA RAMOS, RUSSELL
BARRETO PONCE, LOUIS
BELANDRIA MONSALVE, ALEJANDRO
BELLO ROSARIO, ORLANDO
BRAVO SILVA, JESUS
BRYANT, CLEVIE
BRYANT, JEFFERY
BRYANT, JOSHUA
CABALLERO VALENTIN, MIGUEL
CAEZ ROSARIO, HARRY WILLIAM
CALDERON LOPEZ, KEVIN
CAMACHO COLON, HENRY
CANALES BERMUDEZ, CARLOS
CANDELARIA MALDONADO, GABRIEL
CARRION, LUIS
CASAS RIVERA, ORLANDO
CID, JORGE
COLON QUILES, JOUMAR
COLTON LEE, RAYMOND
CORDOVA ROSARIO, BRYAN
COSME CRUZ, JONATHAN ENRIQUE
CRESPO ADORNO, EDUARDO
CRUZ ALVARADO, ROLANDO
CRUZ MALDONADO, KEVIN JOEL
CRUZ ORTIZ, YAMIL
CRUZ RIVERA, STEVEN
CRUZ SANCHEZ, JOSE
CRUZ SOTO, ARMANDO
DAVILA MAISONET, JOSE

DAVILA RAMIREZ, LUIS ANTONIO
DAVILA RESTO, JUSTINO
DE JESUS FERRER, MANUEL
DE JESUS VARGAS, JOSE
DEATON, MICHAEL
DEL VALLE NAVARRO, ANDRES FERNANDO
DIAZ BURGOS, JONATHAN
DIAZ CAMACHO, PEDRO
DIAZ CLASS, NICOLAS XAVIER
DOMINGUEZ FIGUEROA, CHRISTOPHER
DOMINGUEZ ROMAN, CHRISTIAN MANUEL
DOMINGUEZ SANCHEZ, EMMANUEL
ELIAS RIVERA, ABDIEL
FERRER CLAUDIO, JOSE
FIERRO ROSADO, MIGUEL
FIGUEROA, KENNETH
FILLION, PERRY
GALINDEZ ASENCIO, JOSSIAN
GARCIA CRUZ, JONATHAN
GARCIA RIVERA, JOSE ROBERTO
GARZA, EDWARD
GONZALEZ GONZALEZ, CHRISTIAN
GONZALEZ SANCHEZ, JESUS
GONZALEZ SANTIAGO, ALEXANDER
GONZALEZ TORRES, ANGEL
HENDRY, JORDAN
HERMINA, MARCOS FRANQUI
HERNANDEZ MOJICA, JAIME
HERNANDEZ NIEVES, FRANCISCO
HERNANDEZ RODRIGUEZ, RAFAEL
HIRTLER, JOHN TAYLOR
IBANEZ QUINONES, WADIMIR RAFAEL
IRIZARRY FIGUEROA, JENSEN
JIMENEZ LOPEZ, LUIS
JIMENEZ VAZQUEZ, VICTOR DAVID
JUAREZ ARROYO, EDUARDO
LEON PEREZ, JOSEPH
LOPEZ VEGA, RANDY
LOZADA SANCHEZ, KELVIN ANTONIO
LOZADA SERRANO, EMANUEL

LUGO ROSADO, FRANCISCO
MAISONET, JUAN
MAISONET BURGOS, DEREK
MAISONET BURGOS, JOSHUA
MAISONET GONZALEZ, PEDRO
MARLES, VICTOR
MARRERO, JOSE
MARTINEZ COLON, KARLA
MARTINEZ PEREZ, ANGEL
MATOS MONSERRATE, JUAN
MAYSONET GONZALEZ, PEDRO SADRAC
MELENDEZ VALLE, JAPHET
MENDEZ ALVAREZ, EDDIE NELSON
MERCADO CASTRO, JOSE
MERRYMAN, JACK
MICHEO REYES, EMMANUEL
MIRANDA BURGOS, LUIS
MORALES, LIZ
MORALES BERLY, DERICK
MORALES PELLOT, EFRAIN GABRIEL
MORALES ZAMORA, MITCHELL
NATER DAVILA, JUAN MANUEL
NAVARO, ERIC
NAVEDO GUZMAN, JULIO
NAVEDO RIVERA, KENNETH
NAVEDO TIRADO, JULIO
NIEVES SANTANA, ANGEL
NUNEZ COLON, JONATHAN
NUNEZ RODRIGUEZ, OMAR
OLAN DELGADO, PEDRO
OTERO CLASS, ANTHONY
OTERO VARGAS, JOSE
OYOLA LOPEZ, JUAN
PAGAN VELEZ, MELVIN
PANETO, VERONICA
PEREZ, PEDRO
PEREZ, REYNEL ANTHONY
PEREZ CRESPO, CHRISTOPHER
PEREZ GONZALEZ, MIGUEL
PEREZ MARRERO, ALEXIE

PEREZ PONCE, JOSE EMANUEL
PRADO, CHRISTIAN
QUINONES SANCHEZ, ERIC XAVIER
RAMIREZ, WILMEL
RAMOS FIGUEROA, SAMUEL
RAMOS OLIVERO, NANCY
RESTO, JULIO
RIOS, RAQUEL EVA
RIOS BURGOS, WILNERIS
RIOS SANTOS, LUIS
RIVERA ADORNO, ANALDI
RIVERA GARCIA, JOSHUA
RIVERA MAYSONET, FRANK
RIVERA ROMAN, YONAN
RIVERA ROSARIO, STEVEN
RIVERA RUIZ, NEFTALI
RIVERA VEGA, VICTOR
RIVERA VELEZ, RAFAEL
ROBINSON, AUSTIN
ROBINSON, CHRISTOPHER
ROBLES ORTIZ, JOSE OMAR
RODRIGUEZ ADORNO, APOLINAR
RODRIGUEZ ANDINO, KEVIN
RODRIGUEZ AVILA, ALAN
RODRIGUEZ BALLESTER, HECTOR DAVID
RODRIGUEZ LOPEZ, WILFREDO
RODRIGUEZ ORTIZ, BRAYAN
RODRIGUEZ PABON, JOSE
RODRIGUEZ ROSADO, EDWIN
RODRIGUEZ TIRADO, WILLIAM XAVIER
RODRIGUEZ TORO, EDDIE
ROLDAN CHAVES, HECTOR LUIS
ROLDAN CHAVES, JONATHAN JESUS
ROLDAN CHAVES, LUIS EDUARDO
ROMAN PEREZ, CHRISTIAN
ROMAN PEREZ, JONATHAN
ROMAN ROSADO, KELVIN
ROSARIO, STEVEN
ROSARIO GONZALEZ, OSCAR
ROSARIO PABON, CARLOS

ROSARIO PABON, LUIS
RUIZ JR, DOMINGO
RUIZ MORALES, JULIO
RUIZ ROMAN, ERNESTO ALEJANDRO
SAN ANTONIO BARRETO, HOMERO
SANCHEZ BATISTA, CARLOS OMAR
SANCHEZ BATISTA, JOSEAN EMILL
SANCHEZ ROSARIO, JEREMY
SANTANA NEGRON, CHRISTIAN XAVIER
SANTANA RIVERA, CARLOS DAVID
SANTIAGO JUSINO, ANTHONY
SANTIAGO PADILLA, JESUS
SANTIAGO SILVA, LUIS AGUSTIN
SANTOS CASTRO, CARLOS
SANTOS PABON, RUBEN
SERRANO HERNANDEZ, JOEL
SERVILLA CARRION, NORLAN
SEVILLA LOPEZ, NORLAN
SHARP, KONNOR
SOLER CASANOVA, CHRISTIAN
STAI, SCOTT
TAYLOR, STANLEY LUCAS
THIBODEAUX JR, GERARD
TORRES DAVILA, DANIEL
TORRES GONZALEZ, ANGEL
TORRES ORTIZ, DAVID
TORRES SALGADO, ALEXANDER
TORRES SALGADO, JONATHAN
TOSCANO, RAMON
TREVINO, EDGAR
VALENTIN TIRADO, ENRIQUE
VALLE CARRION, GILBERTO
VARELA, NATASHA
VAZQUEZ FIGUEROA, SAMUEL JESUS
VAZQUEZ GARCIA, LUIS
VEGA LOPEZ, RANDY
VEGA ROSADO, RAUL
VEGA VARGAS, RANDY JR
VEGA VEGA, KEVIN
VELAZQUEZ FIGUEROA, SAMUEL

VILLELOBOS, ALEXIS
VIRUET ROSADO, CHRIS
WHEELER, JEREMY